# SCHNEIDER *v.* AMERICAN BRIDGE COMPANY.*

---

TRIAL; AMENDMENT; ABUSE OF DISCRETION; MASTER AND SERVANT; NEG-
LIGENCE.

1. The granting or refusal of leave to amend is a matter within the dis-
cretion of the trial court.   (Following *Schrot* v. *Schoenfeld,* 23 App. D.
C. 421 and *Chunn* v. *City & Suburban R. Co.* 23 App. D. C. 551.)

---

*Master and Servant.*—The question of the statutory liability of em-
ployers for defects in the condition of their plant is treated in an extensive
note to *Coley* v. *North Carolina R. Co.* 57 L.R.A. 817.

As to different forms of statement of the general rule with respect to
the master's duty as to places and appliances furnished to servant, see
case note to *Armour & Co.* v. *Russell,* 6 L.R.A. (N.S.) 602.

2. Abuse of discretion on the part of the trial court in declining to permit the amendment of a declaration is not shown when the motion to amend was not made until after the jury had been sworn, although the case had been pending for eight months, and no reason appeared for the delay in asking leave to amend, and where it appeared that the object of the amendment was to enable the plaintiff, whose action was for personal injuries received in the State of New York, to declare on two statutes of that State, one of which the trial court considered as shown by his charge, and the other of which is inapplicable to the plaintiff's case.

3. Section 18 of the New York act of 1897, chap. 415, declaring that a person employing another in erecting a house shall not furnish, or erect, or cause to be erected, for the performance of such labor, unsafe or unsuitable scaffolding, hoists, stays, ladders, or other mechanical appliances, does not apply to the case of an employee engaged as a riveter on structural iron work on a building in that State, who, while working some distance above the ground on a girder, and wanting to pick up a tool, instead of turning around on the girder, stepped on a 12-inch board, which was across two beams, and was injured by falling to the ground by reason of the breaking of the board.

4. A workman who, while engaged in riveting the iron framework of a building, stepped on a board he found laid across two beams, and, by reason of the breaking of the board, fell to the ground, a distance of about 40 feet, and was injured, is not entitled to recover from his employer, where it does not appear how the board came to be lying on the beams, or by whom or for what purpose it was placed there, or that the board was in such a defective condition that the employer ought to be charged with negligence in not observing it.

5. The obligation of a master to provide reasonably safe places and structures for his servants to work upon does not impose upon him the duty, as towards them, of keeping a building which they are employed in erecting, in a safe condition at every moment of their work, so far as it depends upon the due performance of that work by them and their fellows.

6. To hold a master responsible, a servant must show that the appliances and instrumentalities furnished were defective. A defect cannot be inferred from the mere fact of injury. There must be some substantive proof of the negligence. Knowledge of the defect, or some omission of duty in regard to it, must be shown.

No. 1861.  Submitted April 15, 1908.  Decided May 19, 1908.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia on a verdict directed by the court in an action to recover damages for personal injuries.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an action to recover damages for personal injuries sustained by the plaintiff, Angelo Schneider, while in the employment of the defendant, the American Bridge Company (a corporation of the State of New York), in the construction of a building in the city of Schenectady, in the State of New York. The declaration is in two counts alleging the employment of plaintiff, and setting him at work in the construction of the building, as an iron worker; that, on October 18, 1906, while so employed, about 40 feet from the ground, he had occasion to step down from an iron girder onto a wooden plank, furnished by the defendant for the use of its employees for scaffolds, platforms, footways, and like purposes, and placed across the beams and floor joists of the building for use of plaintiff and others in their work; that the said board broke beneath the weight of plaintiff and caused him to fall to the ground and sustain serious injuries.

The declaration was filed January 28, 1907, and service had on a representative of the defendant corporation, then doing business in the District of Columbia, which filed the plea of the general issue February 5, 1907.

The case was called for trial on October 28, 1907. After the jury had been selected and sworn, the plaintiff asked leave to amend his declaration by inserting in the first count the words, "upon the statutes of New York in such case made and provided," and by adding the following paragraph to the second count: "And the defendant has had due notice of the time, place, and cause of aforesaid injury served as provided by chapter 600 of the Law of 1902 of the State of New York." The court refused the leave to amend on the ground that it came too late under all the circumstances of the case.

Plaintiff testified that he was employed by defendant in September, 1906, as a riveter on structural iron work in certain buildings it was erecting for the General Electrical Company in Schenectady, New York. Said buildings were about 800 feet long. Plaintiff, on October 18, 1906, was working at the end of the building, the last part that was being constructed. The iron work was started and no brick had been laid. The only iron work then doing was in that part of the building. He was on a riveting job, 30 or 35 feet above the ground. Two other men were working with him on the scaffold, and another, called a heater, was further away on a scaffold by himself. The "heater" threw rivets to the "passer," who would stick one in the hole, and plaintiff would "buck it up." He was using a "spring dolly" before dinner, which is used where you cannot use a "club dolly." · After dinner he came back to work and picked up the "spring dolly" from the scaffold from which he stepped up about 18 inches onto a girder. He laid the "spring dolly" down there and picked up a "club dolly." In picking it up, instead of turning round on the girder, he stepped down on a 12-inch board which was across two beams. The board broke and he fell through to the ground. The girder was about 8 inches wide. He stepped on the board instead of the girder because it had a rough surface and one is less liable to slip than on the iron girder. The big girder was on the outside, and the men were working along it, the scaffold being on the inside and swung on the iron rafters running into the big girder. He undertook to turn on the board instead of the girder because he thought it much safer. Had not handled the board. There were others scattered along there across the beams. "When you walk in these buildings you see boards; and the company generally furnishes boards there. Nobody else furnishes them, and you naturally walk on them." Iron workers walk on boards preferably to iron. Did not know how the board came to be there. The defendant furnished lumber. Knew this, because when he came the "boss" of the riveting gang showed him where the lumber was. He also testified as to the severe nature of his injuries, etc., and read a letter which he had addressed to the

defendant on November 15, 1906, stating his injuries, and present condition.

On cross-examination, he testified that he had been at work for defendant three or four weeks. There were three of them on the one scaffold, and the "heater" with his forge on another. The "gang" tied up the boards composing the scaffold with lumber furnished them. The "boss," Kelly, showed witness the lumber to put up the stagings with, and furnished a new rope in place of an old one. The plank on which he stepped was not fastened to anything. There were other planks around there. Never saw the plank afterwards. He knew that it broke, and did not slip. The board was not in the scaffold, which plaintiff had helped tie up, and had been working on. It was across two beams, and he had not been working on it. The scaffold had to be shifted two or three times a day, and the gang carried the boards. Plaintiff did not carry a board to stand on when "bucking up" rivets, but stood on the scaffold with the rest. It was not customary for the riveting gang to put boards across the top of beams to walk on.

One other witness testified for the plaintiff. He was heating rivets. Witness was working one story above plaintiff. He did not see the accident. Heard some one call, "Pick that man up." Looked and saw plaintiff lying beneath him. He saw a piece of board lying there that had been freshly broken.

When plaintiff closed, the court, on motion of defendant, directed the jury to return a verdict for it; and from the judgment entered thereon plaintiff has appealed.

*Mr. Richard P. Evans, Mr. Fred H. Benson,* and *Mr. W. W. Poultney* for the appellant.

*Mr. John G. Capers* and *Mr. Reginald S. Huidekoper* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. The first error assigned is on the refusal of the court to

grant leave to amend the declaration. The avowed object of the proposed amendments was to bring the case under the operation of two statutes of the State of New York relating to the liability of employers to employees. The first of these is the act of 1897, chap. 415, the 18th section of which declares that a person employing another in erecting a house shall not furnish, or erect, or cause to be erected, for the performance of such labor, scaffolding, hoists, stays, ladders, or other mechanical appliances which are unsafe, unsuitable, improper, and which are not so constructed and operated as to give proper protection to the life and limb of the person so employed. The second is the act of July 1, 1902, chap. 600. This provides that, if personal injury is caused to an employee by reason of any defect in the construction of the ways, works, or machinery connected with or used in the employee's business which arose from, or had not been discovered or remedied owing to, the negligence of the employer, or any person in his service and intrusted by him with the duty of seeing that the same were in proper condition; or by reason of the negligence of any person in the service of the employer, intrusted with or exercising superintendence, or of any person acting as such superintendent with the authority or consent of the employer,—the employee injured thereby, or his representatives in case of death, shall have the same right of compensation and remedies against the employer as if the employee had not been an employee, or not in the service of the employer, or engaged in the work. Section 2 provides that no action shall be maintained under this act, unless notice of the time, place, and cause of injury is given to the employer within one hundred and twenty days, and the action is commenced within one year, after the occurrence of the accident causing injury or death.

The grant or refusal of leave to amend is a matter within the discretion of the trial court. *Schrot* v. *Schoenfeld,* 23 App. D. C. 421, 426; *Chunn* v. *City & Suburban R. Co.* 23 App. D. C. 551, 562. We perceive no abuse of that discretion in this instance. The case had been at issue since February 25, 1907, and no reason appeared why the plaintiff waited until the trial

had begun to ask for leave to amend in respect of a matter which was presumably within his knowledge when the action was begun. Moreover, as far as the operation of the first statute extends, there was no reason why he should amend in order to avail himself of it. That it was considered is shown by the charge of the court as it appears in the record. The defendant sustained no injury through the refusal of the amendment setting up the later statute. Its benefit is limited not only to those who give the required notice, but those also who commence their actions within one year from the date of the injury. That time had elapsed before leave to amend was asked.

2. The question raised on the exception taken on the action of the court in directing a verdict for the defendant cannot be determined on the application of the New York statute of 1897, before mentioned. The court rightly held that it could not apply because there was no evidence whatever tending to show that the injury was occasioned by any defect in the scaffolding erected for the performance of plaintiff's labor, or in any hoist, stay, ladder, or other mechanical contrivance used therein.

3. Tested by the principles of the common law, the evidence was insufficient to show actionable negligence committed by the defendant. An immense building was in course of construction. Plaintiff's special work was at the extreme end of the same, riveting connections with the outer girder. His place of work was upon a scaffold where he appears to have been reasonably safe under the ordinary conditions of his particular labor. It does not appear from the evidence that he or his immediate colaborers were required or expected to walk over the iron framework in order to reach the scaffold provided for them, or to procure tools for the performance of their labor, or that the defendant undertook to lay boards across the beams for the purpose of enabling any of its employees to walk about over the iron framework. How the board came to be lying on the beams, or by whom, or for what purpose, it was laid there, does not appear. For aught that appears, the boards mentioned in the evidence may have been brought and laid by some of the workmen engaged in the building, for their own convenience and

of their own motion, or may have been surplus boards left over from the scaffold construction. "The obligation of a master to provide reasonably safe places and structures for his servants to work upon does not impose upon him the duty, as towards them, of keeping a building which they are employed in erecting in a safe condition at every moment of their work, so far as its safety depends upon the due performance of that work by them and their fellows." *Armour* v. *Hahn,* 111 U. S. 313, 318, 28 L. ed. 440, 441, 4 Sup. Ct. Rep. 433.

Again, there was no evidence to show that the board, if laid across the beam, by the master's authority, for workmen to stand or walk upon at their convenience, was in such a defective condition as that the master ought to be charged with negligence in not observing it. *Looney* v. *Metropolitan R. Co.* 200 U. S. 480, 486, 50 L. ed. 564, 568, 26 Sup. Ct. Rep. 303. It was said in that case: "To hold a master responsible, a servant must show that the appliances and instrumentalities furnished were defective. A defect cannot be inferred from the mere fact of injury. There must be some substantive proof of the negligence. Knowledge of the defect or some omission of duty in regard to it must be shown."

There being no evidence on which a verdict for the plaintiff could rest, the court was right in directing the jury to find for the defendant. The judgment must therefore be affirmed, with costs.                                              *Affirmed.*

A writ of error to the Supreme Court of the United States was allowed June 2, 1908.